**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)**

| | |
|---|---|
| In re:  )<br>  )<br>  ) Chapter 7<br>KRIKOR O. BAYTARIAN,  ) Case No. 10-11821-JNF<br>  )<br>Debtor  )<br>  )<br>  ) | |

### AFFIDAVIT OF RICHARD W. GANNETT, ESQ. IN SUPPORT OF HIS RESPONSE TO COURT'S 7/23/10 SHOW CAUSE ORDER AND IN SUPPORT OF HIS PREVIOUSLY FILED OPPOSITION TO DEBTOR'S MOTION FOR SANCTIONS UNDER FED. BANKR. R. 9011

I, Richard W. Gannett, on oath depose and state as follows:

1. I am an attorney licensed to practice in the Commonwealth of Massachusetts and in the federal courts in this district, and maintain offices at 165 Friend Street, Suite 200, Boston, Massachusetts 02114. I submit this affidavit: (a) in response to the Court's "show cause" order, dated July 23, 2010; and (b) in additional support of my opposition, filed on June 18, 2010, to the motion of the debtor, Krikor O. Baytarian (the "Debtor"), for sanctions under Fed. R. Bankr. P. 9011.

2. On or about December 8, 2008, John Fiore, Sr. and Grace Fiore (the "Fiores") retained me to provide legal services regarding collection of an unpaid promissory note made by the Debtor and Peter Baytarian, and delivered to the Fiores (the "Note").

3. In connection with my representation of the Fiores, the Fiores and I executed a contingent fee agreement, dated December 8, 2008 (the "Fiore Fee Agreement"). In the Fee Agreement, the Fiores granted me exclusive control over all procedural aspects of collection of amounts due under the Note and any litigation arising therefrom. The Fee Agreement also

- 1 -

expressly contemplates that the Debtor and Peter Baytarian might file bankruptcy cases, and the fee structure set forth in the Fee Agreement requires me to take steps to protect any judgment or claim on the Note in the event of a bankruptcy case or cases.

4. I regularly represent clients in a variety of collection matters, which matters I take pursuant to the same or similar contingency fee arrangements and terms as those outlined in the Fee Agreement. In such cases, I have also understood that my clients' expectations were that I would take all necessary steps on their behalf to maximize their recoveries, and that I would exercise my own judgment as an experienced collection attorney as to what those steps should be; my standard fee agreement (including the Fee Agreement) reflects those expectations. I do not necessarily communicate with my clients as to specific procedural steps taken on the path to collection after suit is filed; however, I do immediately report any recoveries made on their behalf, transmit settlement offers made to them through me, and provide status updates to them when requested or when appropriate.

5. In 2008, I filed suit in Suffolk Superior Court on behalf of the Fiores against the Debtor and Peter Baytarian to collect amounts due on the Note. In that lawsuit, I also sought various prejudgment remedies against both defendants, including real estate attachments.

6. I obtained the prejudgment attachments I requested, and timely perfected such attachments. I also conducted discovery, when appropriate, of various businesses or entities doing business with the Debtor, as well as one of the Debtor's lenders.

7. On September 11, 2009, I obtained an execution on a judgment in favor of the Fiores and against the Debtor and Peter Baytarian, in the amount of $268,753.64. Despite my

prejudgment attachments against both defendants, most of the assets against which those attachments were perfected were foreclosed or had no equity.

8. As outlined in the Motion for Relief from Stay that I filed on behalf of the Fiores, I sought supplementary process against the Debtor in the Boston Municipal Court (the "BMC") in January 2010. In connection with the supplementary process proceedings, I represented the Fiores in a two (2) day trial in the BMC (contested by the Debtor), on February 10, 2010 and February 11, 2010, to determine the extent, if any, of the Debtor's equitable ownership interest in 290 Commonwealth Avenue, Unit 5, Boston, MA (the "Back Bay Condominium"). After such trial, the BMC took the matter under advisement.

9. When the Debtor filed his Chapter 7 bankruptcy case on February 24, 2010, the BMC had not yet rendered its decision or findings of fact in the earlier trial. I knew that the period in which the Fiores could contest the Debtor's discharge was brief, and I noted that the Debtor had not listed the Back Bay Condominium as an asset in his bankruptcy schedules.

10. In arriving at my decision to file a motion for relief from stay on behalf of the Fiores (the "Stay Motion"), as well as the reply to the Debtor's opposition to the Stay Motion (the "Reply"), I had in mind the following factors:

    (a) the Fiores only required limited relief from the stay – to permit the BMC to render findings of facts and rulings of law with respect to the Debtor's equitable ownership of the Back Bay Condominium -- and such permission would shortcut any duplicative (and expensive) effort in this Court by the Trustee to establish the same facts in another contested proceeding;

    (b)    the Fiores would not be seeking this Court's permission to take any action against any asset of the Debtor, to obtain a judgment against the Debtor in the BMC, or otherwise to seek broad exemption from the automatic stay;

    (c)    I carefully researched the grounds for stay relief prior to filing the Stay Motion, and concluded that at least one case in another court, – specifically *In re The SCO Group, Inc.*, 395 B.R. 852 (Bankr. D. Del. 2007) (which case I cited in the Reply) -- provided a basis under existing law (or an extension of existing law) for requesting the relief in the Stay Motion to allow the conclusion of pending litigation;

    (d)    I perceived a need to file the Stay Motion on behalf of the Fiores, as well as the Reply, because of my knowledge of my personal liability if I were to take no further action to pursue the Fiores' claims that the Debtor had equitable ownership of the Back Bay Condominium, based upon *Global Naps, Inc. v. Awiszus*, 457 Mass 489 (2010)(contingent fee lawyer's failure to appeal reversible adverse jury verdict on behalf of his clients was malpractice and damages could be recovered from lawyer); and

    (e)    I believed that the filing of the Stay Motion and of the Reply were similar to other procedural actions left to my discretion in the Fee Agreement (and in fee agreements with other clients), and that it was appropriate to exercise that discretion given the limited nature of the relief to be sought in the Stay Motion.

11.    When I filed the Stay Motion and the Reply, I signed and submitted both pleadings because I believed, at that time, that the Stay Motion and the Reply did not violate Fed. R. Bankr. P. 9011. I formed this belief because, to the best of my knowledge and belief, arrived

- 4 -

at after inquiry reasonable under the circumstances (as outlined above), both the Stay Motion and the Reply complied with each of the criteria set forth in Fed. R. Civ. P. 11(b)(1) – (4).

12. In retrospect, however, I appreciate and understand the Court's concern that I would proceed with the Stay Motion and the Reply without communicating my intention to file the Stay Motion or the Reply o the Fiores. I do hereby represent that: (a) all facts stated in the Stay Motion and Reply – regarding the Fiores' judgment against the Debtor, the events in state courts, and events with respect to the Debtor's co-obligee – are true and accurate; (b) the relief requested in the Stay Motion – a lifting of the automatic stay to permit the BMC to issue its findings of fact with respect to the equitable ownership of the Back Bay Condominium, in a pre-petition trial in which the Debtor participated – is justified, according to my legal research done prior to filing the Stay Motion, by existing law or a reasonable extension of existing law; and (c) my intention in filing the Stay Motion and the Reply on behalf of the Fiores was not to deceive the Court as to my continued representation of the Fiores or to harass the Debtor, cause unnecessary delay, or needlessly increase the cost of litigation. Instead, my intention was to reduce costs and shortcut legal proceedings in this Court by permitting the BMC to enter its findings of fact after a completed trial.

13. To the extent that the Court had a different impression of my actions or motives in filing the Stay Motion or the Reply, I sincerely apologize to the Court. As of the date of this affidavit, I also represent to the Court that, notwithstanding my brother counsel's account of his *ex parte* communication with my client, Mr. Fiore: (a) I have never been approached by another Massachusetts lawyer either to replace me as the Fiores' counsel or to act as successor counsel to the Fiores in any matter in which I am representing the Fiores; (b) I have an appearance on file with the Massachusetts Superior Court and the BMC, as well as an appearance in this Court, and,

to my knowledge, no other lawyer has filed an appearance as successor counsel to the Fiores in this Court or in either of the state courts; and (c) subsequent to the Court's hearing on the Stay Motion, Mr. Fiore and I communicated in writing. The subject matter included privileged matters, as well as Mr. Fiore's acknowledgement of the Fee Agreement.

14. In response to the Court's concerns, I have changed my fee agreements and method of dealing with my clients (through instructions to my staff) so that any document that I file in this Court – whether a proof of claim, a motion for relief from stay, or other pleading – will first be provided in draft form to that client for review and approval, prior to filing the document in this Court.

15. In addition, to the extent that the Court interpreted the Stay Motion as a request to lift the automatic stay to enable the BMC to issue orders regarding application of any property of the Debtor to apply to the Fiores' claims, I hereby state unequivocally that I did not intend the Stay Motion for that purpose, and I apologize to the Court for any ambiguity regarding the relief requested in the Stay Motion.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 6th day of October 2010.

     /s/Richard W. Gannett*
Richard W. Gannett

* signed by Kevin C. McGee for Richard W. Gannett, with permission

## ECF CERTIFICATE OF SERVICE

I, Kevin C. McGee, hereby certify that I will, immediately upon receipt of the notice of electronic service, serve by first class mail, postage prepaid, a true and correct copy of the foregoing affidavit, upon any of following persons who are not deemed to have consented to electronic notice or service under MLBR, EFR 9.

  /s/ Kevin C. McGee
Kevin C. McGee

| | |
|---|---|
| Ryan D. Sullivan, Esq.<br>Attorney for Debtor<br>BODOFF & ASSOCIATES<br>120 Water Street<br>Boston, MA 02109 (by ECF) | John J. Fiore, Sr.<br>Grace Fiore<br>29 Valentine Drive<br>Albertson, NY 11507<br>(By First Class Mail, Postage prepaid) |

John O. Desmond, Chapter 7 Trustee
24 Union Street
Framingham, MA 01702 (via ECF

George W. Tetler, III, Esq.
Mark W. Powers, Esq.
Counsel to Norwood Cooperative Bank
BOWDITCH & DEWEY, LLP
One International Place
Boston, MA 02110-2602 (via ECF)