UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KRIKOR O. BAYTARIAN and**             Chapter 7
**ANN L. BAYTARIAN,**                    Case No. 10-11821-JNF
    Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

On July 23, 2010, this Court ordered Attorney Richard W. Gannett ("Attorney Gannett") to show cause why he should not be sanctioned under Fed. R. Bankr. P. 9011(c)(1)(B) for presenting a pleading for an improper purpose and for filing a substantive pleading that was not authorized by his clients, John J. Fiore, Sr. and Grace Fiore (collectively, the "Fiores"). The Court conducted a hearing on October 19, 2010, at which Attorney Gannett and Krikor O. Baytarian and Ann L. Baytarian (collectively, the "Debtors") presented arguments. Certain facts pertinent to resolution of the issue of whether Attorney Gannett should be sanctioned are not in dispute, and neither Attorney Gannett nor the Debtors requested an evidentiary hearing. The Court afforded Attorney Gannett and the Baytarians the opportunity to submit additional materials, but neither

1

party filed any additional affidavits or materials with the Court after the hearing.

Pursuant to Fed. R. Bankr. P. 7052, the Court now makes its findings of fact and conclusions of law with respect to the Order to Show Cause.

**II. FACTS**

The Debtors filed a voluntary Chapter 7 petition on February 24, 2010, listing their address as 290 Commonwealth Avenue, Unit 5, Boston, Massachusetts. On Schedule A-Real Property, they did not list ownership interests in any real estate. On Schedule D-Creditors Holding Secured Claims, they did not list any secured creditors. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtors listed the Fiores as the holders of a claim in the sum of $267,082.68. On their Statement of Financial Affairs, the Debtors disclosed that the Fiores had obtained a judgment from the Suffolk Superior Court, Department of the Trial Court, and that there was another suit commenced by the Fiores that was pending in the Boston Municipal Court (the "BMC").

On March 31, 2010, the Fiores, by their attorney Richard W. Gannett, filed a Motion for Relief from the Automatic Stay. In the Motion, they sought relief from stay "to conduct a certain hearing scheduled by Associate Justice Annette Forde of the BMC on March 31, 2010 at 11:00 a.m. . . . in connection with Supplementary Process No. 2009 01 SP 0382 and in compliance with a recent Order dated March 12, 2010." Specifically, the order, which was dated March 11, 2010, provided: "The parties hereto shall appear in the Boston Municipal Court . . . on March 31, 2010, at 11 a.m., for further hearing on the issue of

Defendant Krikor Baytarian's ability to pay the debt at issue."[1]

In their Motion for Relief from Stay, the Fiores represented that they obtained an execution on September 11, 2009 against Peter J. Baytarian and Krikor O. Baytarian ("Baytarian"), individually and as Trustees of Ox Pasture Lane Realty Trust, in the amount of $268,753.64 from Suffolk Superior Court, Department of the Trial Court, in Civil Action No. 2008-05475; that on October 27, 2009, they commenced a supplementary process action against Baytarian in the BMC; that a preliminary hearing was held on January 13, 2010 in the BMC; and that Baytarian was ordered to prepare a financial statement and obtain copies of his federal tax returns for the past two years no later than the next hearing. According to the Fiores, Baytarian produced the financial statement but not the tax returns. On February 10, 2010, Justice Forde commenced a non-jury trial, which concluded on February 11, 2010. The Debtors filed their Chapter 7 petition two weeks later on February 24, 2010. After the commencement of the Debtors' Chapter 7 case, on March 12, 2010, Justice Forde scheduled a hearing for March 31, 2010 at 11:00 a.m.

The Fiores also claimed in their Motion for Relief from the Automatic Stay that the Debtors' son, Peter J. Baytarian, filed a Chapter 13 petition and failed to give them proper notice to enable them to assert a claim in his case for damages with respect to a custom built house in Cohasset, Massachusetts which was built by Peter and Krikor Baytarian with

---

[1] The order further provided that "[t]he plaintiffs are required to present at the hearing a synopsis of the voluminous documentary proof submitted to the court in support of their request for findings, and a proposed order, if the request is still extant, given the Suggestion of Bankruptcy filed with this court by the defendant."

3

the Fiores' money, together with a substantial construction loan from Norwood Cooperative Bank. According to the Fiores, "[o]ne of the focal points in the Boston Municipal Court trial was Mr. Krikor O. Batarian's legal or equitable interest in a property commonly know as 290 Commonwealth Avenue Unit 5 Boston, MA 02115 ('the Back Bay Condominium')."

The Debtors filed an Opposition to the Motion for Relief from the Automatic Stay, asserting that the Fiores stated no valid grounds for relief from the automatic stay and that the Back Bay Condominium had at all times been titled in the name of Stefan Baytarian. Although they admitted that in the supplementary process action that the BMC considered Krikor Baytarian's legal or equitable interest in the Back Bay Condominium, they denied that it was a focal point of the proceeding. Moreover, they added that, even if the Fiores' representations were true, "[s]upplementary process is strictly a collection tool in aid of creditors" and that, in any event the Suffolk Superior Court had determined that the Back Bay Condominium was owned by Stefan Baytarian and that the BMC had no authority to determine ownership of the Back Bay Condominium. They attached a copy of an order issued in the Suffolk Superior Court action on July 14, 2009 in which the court denied "Plaintiffs' Motion for Special Attachment under G.L. c. 223, § 67 of Property Commonly Known as 290 Commonwealth Avenue, Unit 5, Boston, Massachusetts 02115," stating the following:

> Property as to which an attachment is sought is owned by Stefan Baytarian - who is not a party to this action. This order is not intended to suggest whether plaintiffs have or do not have a viable independent claim against

4

Stefan Baytarian, but none is alleged in this action."
They also attached a recorded quitclaim deed from Ellen D. Nagler, Individually and as Trustee of the Ellen D. Nagler Living Trust to Stefan Baytarian dated August 29, 1997 for the Back Bay Condominium.

The Fiores filed a "Reply and Supplement to Opposition of Debtors Anne [sic] Baytarian and Krikor O. Baytarian Concerning Motion for Relief from the Automatic Stay." The Chapter 7 Trustee also filed an Objection to the Motion for Relief from the Automatic Stay. In their Reply, the Fiores cited Mass. Gen. Laws ch. 244, § 14 for the proposition that the BMC is vested with statutory authority to determine the extent of ownership of property of judgment debtors. Additionally, they argued that they had established "cause" under 11 U.S.C. § 362(d)(1) for relief from stay, noting that Baytarian had repeatedly stated to commercial lenders that he was the owner of the Back Bay Condominium; that he paid the mortgage on the property, that he did not pay rent to his son, and that he deducted the mortgage payments on his personal income tax returns. Nevertheless, the Fiores recognized that Baytarian had appeared pro se in the BMC and "the only remaining task for Krikor O. Baytarian to perform at the BMC is the submission of proposed findings." They added: "In the likely event that the BMC will find Krikor O. Baytarian has an interest in the Back Bay Condominium, and the Baytarians wish to continue the bankruptcy process, rather than dismiss it, then the Bankruptcy Court will have oversight over further proceedings, not the BMC."[2]

---

[2] As the Debtors filed a voluntary Chapter 7 case, dismissal would be governed by 11 U.S.C. § 707(a). Chapter 7 debtors, unlike Chapter 13 debtors, have no right to

In his Objection, the Chapter 7 Trustee asserted that this Court, not the BMC, is the proper forum for the determination of the Debtors' equitable ownership of the Back Bay Condominium.

On May 5, 2010, the Court held a hearing on the Motion for Relief from Stay. Counsel to the Debtors represented that he had received a telephone call from Mr. Fiore informing him that he had not authorized the filing of the Motion for Relief from the Automatic Stay and that he had not spoken with Attorney Gannett in over one year. Attorney Gannett confirmed that he had not spoken to the Fiores for about six to eight months and had not spoken to them about the contents of the Motion for Relief from the Automatic Stay prior to filing it. He asserted, however, that under his Fee Agreement with the Fiores he had the authority to pursue the matter. The Court denied the Motion for Relief from the Automatic Stay and indicated its willingness to entertain a motion for sanctions.

On May 18, 2010, the Debtors filed a Motion for Sanctions Pursuant to Rule 9011, seeking attorneys' fees and costs incurred in opposing the Motion for Relief from the Automatic Stay. In an accompanying Memorandum, the Debtors asserted that Attorney Gannett violated Rule 9011 because he was (1) not authorized to file such motion on behalf of the Fiores, (2) it was wholly frivolous and without support in fact or law, and (3) its central purpose was to embarrass and harass the Baytarians. They added that ownership of the Back Bay Condominium was determined by the Suffolk Superior Court, precluding

---

voluntarily dismiss their cases.

a contrary determination by the BMC due to application of the doctrine of res judicata. The Debtors served the Motion for Sanctions on Attorney Gannett on May 18, 2010 "via the ECF System to all counsel of record, and by hand delivery to Richard W. Gannett, Esq. . . . ."

In response to the Baytarians Motion for Sanctions, the Court, on May 20, 2010, issued an order requiring counsel to the Debtors to file a statement of services rendered in conjunction with the defense of the Motion for Relief from the Automatic Stay and affording Attorney Gannett an opportunity to file a response.

On June 4, 2010, Debtors' counsel filed a Statement of Services, seeking the sum of $3,827.75, consisting of $3,783 in fees and $44.75 in costs. Counsel for the Debtors included an itemized breakdown of the services performed, the hours spent and the applicable hourly rate for paralegals, associates, and partners in his law firm.

On June 18, 2010, Attorney Gannett filed an Opposition, referencing the judgment the Fiores obtained against the Baytarians, as well as their son, Peter Baytarian. Attorney Gannett argued the following:

> A. The terms of the written fee agreement (executed by John J. Fiore, Sr.) allocates exclusive authority to Gannett concerning procedural matters; Motions for Relief From Stay are procedural. As stipulated in the written fee agreement bankruptcy representation was bargained for;
>
> B. The duly appointed Chapter 7 Trustee has conducted one or more 11 U.S.C. sec. 341 examinations of Mr. Baytarian and based upon the available data appears poised to file and serve an adversary complaint seeking to deny Mr. Baytarian and Mrs. Baytarian's discharge due to the non-disclosure of Mr. Baytarian's ownership interest in the Back Bay Condominium;
>
> C. The Superior Court awarded the full amount of Gannett's requested attorney's fees demonstrating Gannett was authorized to prosecute the civil

action for the Fiores, and the legal services performed were reasonable, necessary and proper;

D. The Baytarians' 9011 motion is noncompliant with the "Safe Harbor" provisions of Rule 9011 and is also manifestly untimely as the Court denied the underlying motion in question – the relief from stay motion. The Baytarians' 9011 motion was served after they prevailed on the underlying Motion for Relief from stay [sic] thereby precluding relief;

E. Baytarian's claim is predicated upon inadmissible hearsay, in violation of Fed. Rule of Evidence 801;

F. Pursuant to the *Rooker-Feldman* doctrine or res judicata this Court may not serve as an appellate court concerning rulings and findings of the Massachusetts Superior Court where Baytarian was present and fully participated in the assessment of damages hearing where he was overruled in toto;

G. Baytarian lacks credibility as he has been untruthful during proceedings in the Boston Municipal Court when ordered to disclose assets by said Court;

H. The relief from stay motion was grounded in law and fact as there was no res judicata concerning the attachment upon the property commonly known as 290 Commonwealth Avenue Unit 5 Boston, MA ("the Back Bay Condominium").

Attorney Gannett attached a copy of his fee agreement with the Fiores which

provided:

Upon execution of this agreement . . . the firm will take steps to perfect the clients' claims. The firm will file suit on the clients;[sic] behalf in a court of competent jurisdiction in the Commonwealth of Massachusetts. *All decisions to be made on the procedure of this case will be made by the firm.*

(emphasis supplied).

The Debtors filed a Reply to Attorney Gannett's Opposition. They emphasized his

failure to obtain specific authorization from the Fiores before filing his Motion for Relief

8

from the Automatic Stay. Following the submission of the Motion for Sanctions and Opposition, this Court, on July 23, 2010, issued its own Order to Show Cause why Attorney Gannett should not be sanctioned pursuant to Fed. R. Bankr. P. 9011(c)(1)(B).

On October 6, 2010, Attorney Gannett submitted his Response to the Court's Order to Show Cause, together with an Affidavit. In his Response, Attorney Gannett asserted that pursuant to his fee agreement with the Fiores, as well as Massachusetts law, he had the discretion to decide the appropriate steps to take on behalf of his clients to prosecute or collect on their claims against Baytarian (short of settlement or release of the claim) and that the filing of the Motion for Relief from the Automatic Stay fell within that discretion. Additionally, he argued that prior to filing the Motion for Relief from the Automatic Stay, Attorney Gannett "undertook an inquiry reasonable under the circumstances and concluded, in good faith, that the Stay Motion complied with each of the criteria set for in Fed. R. Civ. P. 11(b)(1) - (4)."

Attorney Gannett maintained that pursuant to his fee agreement, dated December 8, 2008, he represented the Fiores at the time he filed the Motion for Relief from the Automatic Stay. In his Affidavit accompanying his Response, he represented that he considered the Motion for Relief from the Automatic Stay "a procedural pleading that did not require his clients' prior approval or review because the Fee Agreement designated to him the discretion to file procedural pleadings, including bankruptcy pleadings, without prior consultation with the Fiores." He added that, rightly or wrongly, because of the narrow lifting of the stay sought to permit the BMC to announce its findings of fact and

rulings of law, he did not consider the Motion for Relief from Stay to be a substantive motion. Attorney Gannett also stated that he was concerned that failure to seek relief from the automatic stay could lead to an accusation of neglect, citing <u>Global Naps, Inc. v. Awiszus</u>, 457 Mass. 489 (2010), in which the Supreme Judicial Court stated: "'[O]nce an attorney has been recognized as the representative of a party on the record, he shall be presumed so to continue, until his authority is revoked, and his appearance withdrawn, and due notice thereof given.'" 457 Mass. at 503 (quoting <u>Lewis v. Sumner</u>, 54 Mass. 269, 13 Met. 269, 272 (1847)), and <u>Jones v. Rabanco, Ltd.</u>, 2006 WL 2237708 (W.D. Wash. Aug. 3, 2006), in which the court stated: "'once established, a lawyer-client relationship does not terminate easily. Something inconsistent with the continuation of the relationship must transpire in order to end the relationship.'"(quoting <u>SWS Fin. Fund A v. Salomon Bros., Inc.</u>, 790 F.Supp. 1392, 1398 (N.D.Ill.1992)). In short, Attorney Gannett maintains that he acted within the scope of his retention by filing the Motion for Relief from the Automatic Stay, even if the filing of the motion was a unilateral decision because it was a continuation of on-going litigation. Finally, Attorney Gannett indicated that he had amended his fee agreements and engagement procedures to confirm the scope of his authority, including the filing of any motions.

Attorney Gannett also maintained that there is precedent for a narrow lifting of the automatic stay to permit another court to rule on a matter already litigated, citing <u>In re The SCO Group, Inc.</u>, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of

the circumstances to determine whether sufficient cause exists to lift the stay."), and In re Birchall, 2007 WL 1992089 (Bankr. D. Mass. July 3, 2007).[3] He reiterated a prior contention that he did not intend the Motion for Relief from the Automatic Stay "to enable the BMC to issue orders regarding application of any property of the Debtor to apply to the Fiores' claims."

As noted above, the Court heard the parties on October 19, 2010. At the hearing, the Court, after reviewing Attorney Gannett's Response and Affidavit, expressed the view that if the BMC had litigated the issue of whether Baytarian had an equitable interest in the Back Bay Condominium, then the filing of the Motion for Relief from the Automatic Stay may have been justified because property of the estate includes all equitable interests of the debtor in property, as well as all legal interests. See 11 U.S.C. § 541(a). The Court afforded the Fiores and the Debtors an opportunity to submit the trial transcripts and the record from the BMC so that it could determine the focus of the BMC proceeding. Neither party

---

[3] The court in SCO Group, identified the following balancing test to determine whether to grant relief from the automatic stay for cause:

   1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

   2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

   3. The probability of the creditor prevailing on the merits.

395 B.R. at 857 (citation omitted).

submitted any records from the BMC

Notably, neither the Fiores nor the Chapter 7 Trustee filed a complaint objecting to the discharge of either or both Debtors under 11 U.S.C. § 727, and the Trustee has not filed, as of the date of this decision, a complaint for a declaratory judgment that the Debtors are the equitable owners of the Back Bay Condominium. The Debtors received their discharge on September 15, 2010.

## III. DISCUSSION

Federal Rule of Bankruptcy Procedure 9011 provides in pertinent part:

> (b) **REPRESENTATIONS TO THE COURT**. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

12

(c) **SANCTIONS.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

> (1) How Initiated.
>
>> (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.
>>
>> (B) On court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.
>
> (2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in

13

> subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
>
>> (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
>>
>> (B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.
>
> (3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

Fed. R. Bankr. P. 9011(b) and (c).

Upon consideration of the provisions of Fed. R. Bankr. P. 9011 and Attorney Gannett's responses and Affidavit, the Court releases its order to show cause. The Court concludes that Attorney Gannett had sufficient authority under his fee agreement to file a motion for relief from the automatic stay without the prior approval of his clients. Accordingly, the Court concludes that he remained counsel to the Fiores as there was no evidence that they had or have terminated his services.

Additionally, the Court lacks information from which it can evaluate the extent to which the BMC focused on the determination of whether the Debtors were the equitable owners of the Back Bay Condominium. The Court informed the parties of its desire for a

more complete record from the BMC. In light of the Debtors' decision or inability to provide such a record, the Court infers that the focus of the trial in the BMC was whether the Debtors were the equitable owners of the property. Ownership of property specifically is contemplated to be an issue during a supplementary process action in view of the language of Mass. Gen. L. ch. 224, §§ 14 and 15. Section 14 provides in pertinent part:

> A judgment creditor or a person in his behalf may file in court an application for supplementary process under this chapter. Upon the filing of such an application, a summons may issue, requiring the judgment debtor to appear at a time and place named therein and submit to an examination relative to his or its property and ability to pay . . . .

Mass. Gen. L. ch. 224, § 14. Section 15 provides in pertinent part: "The judgment debtor, if appearing, shall be examined on oath as to his or its property and ability to pay. . .." Id. at § 15. Thus, sections 14 and 15 expressly pertain to an examination of the judgment debtor's property interests, as well as the ability to satisfy a judgment.

Having determined that it lacks sufficient grounds to sanction Attorney Gannett, the Court recognizes that the facts of this case fall close to the line separating legitimate and frivolous pleadings. Indisputably, the bankruptcy court under the district court's order of reference, see LR, D. Mass. 201, has exclusive jurisdiction "of all the property, wherever located, of the debtor" as of the commencement of the case, and of property of the estate. See 28 U.S.C. § 1334(e). Moreover, the Chapter 7 trustee, not individual creditors, is charged with collecting and reducing to money property of the estate. See 11 U.S.C. § 704(a). The Fiores were not without recourse in the bankruptcy court and could have filed motions for examinations under Fed. R. Bankr. P. 2004, and an adversary proceeding

15

against either or both Debtors based upon their contention that ownership of the Back Bay Condominium was concealed or that the Debtors made false oaths with respect to the ownership of a valuable asset. *See generally* 11 U.S.C. § 727(a)(2) and (4). The Court observes, however, that the relief requested by Attorney Gannett on behalf of the Fiores was limited. Attorney Gannett was not seeking to collect the Fiores' judgment in moving for relief from stay. He specifically limited the relief sought to permitting "the Boston Municipal Court to enter findings concerning the admitted evidence and testimony adduced at the Supplementary Process Trial . . . ." Under those circumstances and based upon the record of proceedings described above, this Court concludes that Attorney Gannett did not violate Fed. R. Bankr. P. 9011(b) and sanctions are unwarranted.

## IV. CONCLUSION

In view of the foregoing, the Court denies the Debtors' Motion for Sanctions as the Debtors did not comply with the safe harbor provisions set forth in Fed. R. Bankr. P. 9011(c)(1) and releases its order to show cause.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: January 11, 2011
cc: Ryan Sullivan, Esq., Richard W. Gannett, Esq., Mel L. Greenberg, Esq., Kevin C. McGee, Esq.